**UNITED STATES of America, Plaintiff,**

v.

**Michael James O'MARA, Defendant.**

**No. CV93–2320–HLH.**

United States District Court,
C.D. California.

Aug. 20, 1993.

Robert S. Scott, Asst. U.S. Atty., Los Angeles, CA, for plaintiff.

Michael James O'Mara, pro se.

## ORDER DENYING PETITION UNDER § 2255

HUPP, District Judge.

Michael James O'Mara moves under 28 U.S.C. § 2255 to vacate his sentence. On October 15, 1990, O'Mara was convicted after jury trial of possessing an unregistered machine gun in violation of the National Firearms Act, 26 U.S.C. § 5861(d). He was sentenced to 21 months imprisonment. On May 8, 1992, the Ninth Circuit affirmed O'Mara's conviction. *See United States v. O'Mara*, 963 F.2d 1288 (9th Cir.1992). The court has jurisdiction to hear O'Mara's motion pursuant to 28 U.S.C. § 2255. The motion is denied for the reasons stated hereafter.

### I

O'Mara urges the court to follow the Tenth Circuit and hold that his conviction is unconstitutional. *See United States v. Dalton*, 960 F.2d 121 (10th Cir.1992). In *Dalton*, the Tenth Circuit reversed a conviction under section 5861(d) for possession of an unregistered machine gun.[1] The NFA provides that an "[application to register a firearm] shall be denied if the ... possession of the firearm would place the transferee in violation of the law." 26 U.S.C. § 5812(a). After Congress enacted the NFA in 1934, and amended it in 1968, Congress passed a separate criminal statute in 1986 that prohibits the possession of any machine gun.[2] 18 U.S.C. § 922(*o*). Thus, the defendant in *Dalton* was convicted under section 5861(d) for failing to perform an act that is prohibited under section 5812(a)—namely, the registration of a machine gun. The Tenth Circuit concluded that such a conviction violates notions of fundamental fairness as guaranteed by the due process clause of the Fifth Amendment.[3] *Dalton*, 960 F.2d at 124.

The Tenth Circuit also held that section 922(*o*) undercut the constitutional basis of section 5861(d). *Dalton* noted that Congress enacted section 5861(d) pursuant to its power to tax. Indeed, from the Supreme Court's perspective, the NFA "contains no regulation other than the mere registration provisions, which are obviously supportable as in aid of a revenue purpose. On its face, it is only a taxing measure...." *Sonzinsky v. United States*, 300 U.S. 506, 513, 57 S.Ct. 554, 555, 81 L.Ed. 772 (1937). *See also United States v. Rock Island Armory, Inc.*, 773 F.Supp. 117 (C.D.Ill.1991) (discussing legislative history of the NFA). With the enactment of section 922(*o*), however, Congress effectively prevented the registration of machine guns. The mandate of section 922(*o*) was therefore held to eviscerate the constitutional legitimacy of section 5861(d) as an aid to tax collection. *See Dalton*, 960 F.2d at 124–25.

### II

The Ninth Circuit recently addressed the constitutionality of a conviction under section 5861(d), but did not decide the issue. *See United States v. Kurt*, 988 F.2d 73 (9th Cir. 1993). Section 922(*o*) contains an exception for the "lawful transfer or lawful possession of a machine gun that was lawfully possessed before [May 19, 1986]." 18 U.S.C.

---

**1.** Section 5861 provides: "It shall be unlawful for any person ... (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record...."

**2.** Section 922(*o*)(1) provides: "Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machine gun."

**3.** For the same reason, the court held that section 922(*o*) implicitly repealed section 5861(d). *See Dalton*, 960 F.2d at 126.

§ 922(*o*)(2)(B).[4] In *Kurt*, the Ninth Circuit noted that a defendant who fell within this exception was free from the mandate of section 922(*o*) and thus could comply with the registration requirement of section 5812(a). The court placed the burden on the defendant to establish that he or she purchased the machine gun after the enactment of section 922(*o*). Since the defendant failed to meet this burden, the court affirmed his conviction under section 5861(d).

Unlike the defendant in *Kurt*, O'Mara was clearly subject to section 922(*o*). Indeed, the record establishes that the machine gun was not "lawfully possessed" before the enactment of section 922(*o*), regardless of when it was manufactured. The government introduced evidence at trial that the machine gun was never registered to O'Mara or any other owner. (RT at 96) O'Mara also testified at trial that he received the machine gun in early 1990. (RT at 165) Thus, the court must decide the issue raised but undecided in *Kurt*—namely, the constitutionality of a conviction under section 5861(d) where the defendant is subject to the terms of section 922(*o*).

## III

Though *Kurt* did not decide the issue before this court, its dicta suggests an answer: "[W]e note with favor the analysis in *Dalton*." *Kurt*, 988 F.2d at 75. While discussing *Dalton*, however, *Kurt* did not discuss two controversial assumptions underlying *Dalton*'s analysis. First, *Dalton* assumes that the NFA requires every person who possesses a firearm to register the firearm. Second, it assumes that the sole constitutional basis of section 5861(d) is the power of Congress to tax. Both these assumptions

were criticized by the Fourth Circuit. *See United States v. Jones*, 976 F.2d 176 (4th Cir.1992) (upholding a conviction under section 5861(d)). Indeed, the second assumption is contrary to Ninth Circuit authority. *See United States v. Evans*, 928 F.2d 858, 862 (9th Cir.1991) (holding that both sections 5861(d) and 922(*o*) are valid regulations of interstate commerce).

### A

The Tenth Circuit held that every offense under section 5861(d) has two elements—the possession of a firearm and the failure to register the firearm. *Dalton*, 960 F.2d at 123. This holding is based on a single Supreme Court case, *Haynes v. United States*, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968). In *Haynes*, the defendant argued that his obligation to register the firearm compelled him to provide incriminating information in violation of the Fifth Amendment. The government responded that he was convicted under the provision prohibiting possession of an unregistered firearm, not the provision requiring registration. Thus, the Court addressed whether the offense of possessing an unregistered firearm has the same elements as the offense of failing to register a firearm.

The *Haynes* Court noted that the section prohibiting the possession of an unregistered firearm referred to the NFA's registration requirement.[5] This reference "suggest[s] strongly that the perimeter of the offense which it creates is to be marked by the terms of the registration requirement imposed...." *Id.* at 93, 88 S.Ct. at 728. The pre–1968 NFA imposed a registration requirement on every person who possessed a firearm.[6] Given the scope of this registra-

---

**4.** Under this exception, a category of machine guns—those "lawfully possessed" before the enactment of section 922(*o*) in 1986—may be legally possessed and transferred today. *See United States v. Ferguson*, 788 F.Supp. 580, 581 (D.D.C. 1992).

**5.** The current version—section 5861(d)—also refers to the NFA's registration requirement. *See supra* note 1.

**6.** As the *Haynes* Court noted:
[The NFA] indicates quite precisely that "[e]very person possessing a firearm" must, unless

excused by the section's exception, register his possession with the Secretary or his delegate. Moreover, the Treasury regulations are essentially unequivocal; they specifically provide that "[e]very person in the United States possessing a firearm (a) not registered to *him*, ... must execute an application for the registration of such firearm...."
*Id.* 390 U.S. at 93, 88 S.Ct. at 728 (emphasis in original).

tion requirement, the Court concluded that the gravamen of the defendant's offense was both his possession of an unregistered firearm and his failure to register the firearm.

As a result of *Haynes,* Congress amended the NFA in 1968.[7] The current NFA provides that "each firearm transferred shall be registered to the transferee by the transferor." 26 U.S.C. § 5841(b). *See also* 26 U.S.C. § 5812(a)(1).[8] The NFA explicitly excludes the transferee from the registration requirement. *See United States v. Freed,* 401 U.S. 601, 603–04, 91 S.Ct. 1112, 1115, 28 L.Ed.2d 356 (1971) ("Under the present Act only possessors who lawfully make, manufacture, or import firearms can and must register them; the *transferee does not and cannot register.*") (emphasis in original). Thus, the NFA does not require—nor does it allow—the transferee to register the firearm.[9]

The Tenth Circuit did not recognize that the 1968 amendments altered the elements of the offense of possessing an unregistered firearm. As amended, the NFA creates a single mandate for the transferee of the firearm. It prohibits him from accepting possession of a firearm that has not been properly registered by the transferor. Accord-

ingly, a transferee violates section 5861(d) because he possesses an unregistered machine gun, not because he fails to register the machine gun. Any other construction would expand section 5861(d) beyond the scope of the NFA's registration requirement. *See Haynes,* 390 U.S. at 93, 88 S.Ct. at 728.

As applied to a transferee, section 5861(d) and section 922(*o* ) do not impose conflicting mandates. For instance, O'Mara did not violate section 5861(d) because he imported, manufactured, or made the machine gun. Rather, he violated section 5861(d) because he accepted possession of the machine gun.[10] Accordingly, O'Mara could have complied with both statutes by refusing to accept possession of the unregistered machine gun.[11] *See Jones,* 976 F.2d at 183. Indeed, O'Mara was convicted for the very act prohibited under section 922(*o* )—the possession of a machine gun.[12]

### B

The Tenth Circuit notes correctly that Congress enacted section 5861(d) pursuant to its power to tax. It did not consider, however, whether section 5861(d) also has a constitutional basis in the commerce clause.[13]

---

**7.** Based on its construction of the NFA, the Court held that the defendant's conviction violated his right against self-incrimination. Congress amended the NFA to eliminate the constitutional defects revealed in *Haynes.*

**8.** Section 5812(a)(1) prohibits the transfer of firearms "unless (1) the transferor of the firearm has filed with the Secretary a written application . . . for the transfer and registration of the firearm to the transferee. . . ."

**9.** *See also Cox v. Bureau of Alcohol, Tobacco & Firearms,* 571 F.2d 267, 269 (5th Cir.1978) ("[T]here is no way in which a transferee or possessor can register firearms with the national registry [except where the transferee is a government entity]."); *United States v. Mayo,* 498 F.2d 713, 717 (D.C.Cir.1974) ("The statute simply requires a purchaser (transferee) to defer taking possession of the weapon until the transaction is registered."); *United States v. Black,* 431 F.2d 524, 529 (6th Cir.1970) ("[A] possessor commits an offense only for his voluntary election to possess a firearm that is contraband because it is unregistered.").

**10.** The record indicates clearly that O'Mara was a transferee of the machine gun. (RT at 165)

**11.** The Tenth Circuit also held that section 922(*o* ) implicitly repealed section 5861(d). *Dalton,* 960 F.2d at 126. "In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and the later statutes are irreconcilable." *Morton v. Mancari,* 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). Since both statutes prohibit the same conduct—possession of a machine gun—they are not irreconcilable.

**12.** This analysis would not apply if petitioner were a manufacturer, importer or maker of machine guns. The NFA requires such individuals to register the firearms they manufacture, import, or make. *See* 26 U.S.C. § 5841(b). Notably, the *Dalton* court reversed the conviction of a transferee of firearms, while the *Jones* court affirmed the conviction of a maker of firearms. Thus, this court declines to follow either the Tenth Circuit's or Fourth Circuit's analysis.

**13.** Indeed, it seemed content to note that Congress doubted whether the NFA could have a constitutional basis in the commerce clause. *See Dalton,* 960 F.2d at 124 (citing testimony of then Attorney General Homer S. Cummings before the House Committee on Ways and Means). Since

In most situations, courts "will not ascribe to Congress an intent to exercise its power under the commerce clause when it has invoked the taxing power in enacting the legislation." *United States v. Giannini,* 455 F.2d 147, 148 (9th Cir.1972). Yet, where the explicit constitutional basis for a statute is doubtful, a court may invoke another constitutional basis. *See Minor v. United States,* 396 U.S. 87, 98 n. 13, 90 S.Ct. 284, 289 n. 13, 24 L.Ed.2d 283 (1969) (holding that even if registration requirements are not sustainable as a revenue measure, they are "sustainable under the powers granted Congress in Art. I, § 8").

■ The Ninth Circuit holds that section 5861(d) is a valid exercise of the authority vested in Congress by the commerce clause. *See Evans,* 928 F.2d at 862. In *Evans,* the defendant argued that Congress lacks the power to prohibit the mere possession of an unregistered machine gun without requiring proof that the machine gun entered interstate commerce. The court did not reject the defendant's argument on the grounds that section 5861(d) is rooted in Congress' power to tax. *Cf. Giannini,* 455 F.2d at 148 (rejecting the same argument on such grounds). Instead, it rejected his argument on the merits and specifically upheld the provision under Congress' power to regulate commerce. Thus, even if section 5861(d) does not aid in the tax function after section 922(o ) it survives as a legitimate regulation of interstate commerce.

## IV

■ The government argues that O'Mara's failure to raise the constitutionality of section 5861(d) at trial or on direct appeal constitutes a "procedural default." It concludes that O'Mara cannot raise the issue in a collateral proceeding absent showing both cause and prejudice. *See United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982) (establishing cause and prejudice standard for procedural defaults). O'Mara argues in part, however, that he was

the NFA's enactment in the 1930s, however, the Supreme Court has clarified and expanded the scope of the commerce clause.

convicted under either an unconstitutional statute or a repealed statute. "If [O'Mara's] claim were correct, the indictment would fail to state an offense against the United States and the district court would be deprived of jurisdiction. Because the defect complained of is jurisdictional, [O'Mara's] claim is reviewable." *United States v. Broncheau,* 597 F.2d 1260, 1262 n. 1 (9th Cir.1979). *Accord United States v. Mitchell,* 867 F.2d 1232, 1233 n. 2 (9th Cir.1989) (citing *Broncheau* ).

■ The government also fails to identify a procedural default. *Cf. Frady,* 456 U.S. 152, 102 S.Ct. 1584 (failure to make a contemporaneous objection to jury instructions constitutes a procedural default). The Ninth Circuit has not held that the mere failure to raise a constitutional claim on direct review constitutes a procedural default and thus prevents consideration of the issue in a collateral proceeding absent a showing of cause and prejudice.[14] *See United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir.1984) ("[C]onstitutional claims may be raised in collateral proceedings even if the defendant failed to pursue them on appeal.")

## V

The court holds that 26 U.S.C. § 5861(d) is constitutional as applied to O'Mara. The motion to vacate sentence is denied.

IT IS SO ORDERED.

**14.** Other courts have held that the failure to raise such an issue on direct review is a procedural default. *See Norris v. United States,* 687 F.2d 899 (7th Cir.1982).