Patrick ENGLISH, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Derek TANO, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Lutrell DAVIS, Plaintiff–Appellee,

v.

UNITED STATES of America,
Defendant–Appellant.

Nos. 91–16442, 91–16500 and 92–15368.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1992.

Decided Nov. 1, 1994.

As Amended Nov. 21, 1994.

John Ashford Thompson, Honolulu, HI, for plaintiff-appellant English and for plaintiff-appellee Davis.

Suzanne Terada, and Richard S. Kawana, Honolulu, HI, for plaintiff-appellant Tano.

Louis A. Bracco, Asst. U.S. Atty., Honolulu, HI, for the defendant-appellee in English and the defendant-appellant in Davis.

Before: BROWNING, NORRIS, and REINHARDT, Circuit Judges.

Opinion by Judge REINHARDT; Concurrence by Judge BROWNING.

REINHARDT, Circuit Judge:

### Introduction

This case forces us to attempt to make some sense of the procedural morass that surrounds habeas corpus. In all three cases, a United States magistrate presided over voir dire without the consent of the defendants. While the cases were still pending on direct appeal, the Supreme Court in *Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), held that it is per se reversible error for a magistrate to preside over jury selection in a felony trial without the defendant's consent. Subsequently, each defendant sought review in the Supreme Court, but none of the petitions for certiorari raised a *Gomez* claim. Instead, the defendants' attorneys chose to pursue the issue in petitions for collateral relief under 28 U.S.C. § 2255. Although the petitioners would clearly prevail on the merits, the government argues that we must overlook the reversible error that transpired simply because their attorneys raised their *Gomez* claims in § 2255 rather than certiorari petitions. Because, under the law of this circuit (at least as of the time of the purported procedural defaults in this case), there was no rule requiring the petitioners to raise their *Gomez* claim on direct appeal, we must reach the merits of their petitions. Accordingly, we reverse the judgments of the district court which rejected English's and

Tano's petitions, and we affirm the judgment of the district court which granted Davis's petition.

### Facts

In this consolidated appeal, English and Tano appeal from the judgment of the district court (per Judge Tashima) which denied their § 2255 petitions. The government appeals from the judgment of the district court (per Judge Rosenblatt) which granted Davis's § 2255 petition.

### A. *English v. United States*, No. 91–16442

#### *Tano v. United States*, No. 91–16500

In February of 1988, Patrick English and Derek Tano were tried on cocaine distribution and conspiracy charges in the United States District Court for the District of Hawaii. A federal magistrate presided over the selection of the jury for the defendants' trial, a practice which we had previously upheld on at least two occasions. *See United States v. Peacock*, 761 F.2d 1313 (9th Cir.), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985); *United States v. Bezold*, 760 F.2d 999 (9th Cir.1985), *cert. denied*, 474 U.S. 1063, 106 S.Ct. 811, 88 L.Ed.2d 786 (1986). Neither English nor Tano objected to the magistrate's role in the voir dire procedure. The defendants were each convicted on one count. The district court sentenced English to eight years imprisonment and Tano to three years.

English and Tano both took direct appeals from the district court's judgment. However, their briefs on appeal did not assert that the district court erred by allowing the magistrate to preside over voir dire. In an unpublished memorandum, this court affirmed English and Tano's convictions on May 12, 1989. One month later, on June 12, 1989, the Supreme Court held in *Gomez* that it is per se reversible error for a magistrate to preside over jury selection in a felony trial. English filed a petition for certiorari in the Supreme Court on July 7, 1989, and Tano

filed a certiorari petition on July 21. Neither petition raised the *Gomez* issue, and both petitions were denied in early October.

On September 29, 1989, while his petition for certiorari was pending, English filed a motion raising the *Gomez* claim in the district court under 28 U.S.C. § 2255. On October 10, the district court issued an order staying English's § 2255 proceedings pending completion of his direct appeal. The order stated:

> Although a § 2255 motion may be made "at any time," prudence alone, if not technical exhaustion requirements, dictate that the motion be held in abeyance pending final determination of defendant's direct appeal. For example, it is possible that the Supreme Court may summarily remand for reconsideration in light of *Gomez*. Or, even if certiorari is denied, the Ninth Circuit may favorably entertain a motion to recall the mandate in light of its own subsequent decision in *France*.

When the district court filed its order, it was understandably unaware that the Supreme Court had just denied English's petition for certiorari.

On October 31, 1989, Tano filed a § 2255 petition which raised the *Gomez* claim. Adhering to a procedure similar to the one it had followed in addressing English's petition, the district court entered an order holding Tano's § 2255 proceedings in abeyance pending the completion of his direct appellate remedies. Specifically, the district court ordered Tano to file in this court a motion to recall the mandate in his direct appeal:

> Although a § 2255 motion may be made "at any time," prudence dictates that the motion be held in abeyance and petitioner be required to file with the Ninth Circuit a motion to recall the mandate in petitioner's direct appeal, in the light of its own subsequent decision in *France*.

Neither English nor Tano filed a motion to recall the mandate in this court.[1]

---

1. English and Tano claim that they did not file such a motion because (1) the language of this court's decision in *France* precluded it; (2) this court was closed to all but emergency motions

following the Loma Prieta earthquake in October of 1989; and (3) the government took the position that the *Gomez* issue could not be raised for the first time in this court on appeal. The sec-

The district court deferred submission of English's and Tano's petitions pending the Supreme Court's decisions in *United States v. France*, 498 U.S. 335, 111 S.Ct. 805, 112 L.Ed.2d 836 (1991) (per curiam) (affirming by an equally divided Court), and *Peretz v. United States*, 501 U.S. 923, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991). On September 9, 1991, it denied both petitions. *See United States v. English*, 777 F.Supp. 791 (D. Hawaii 1991). The district court held that English and Tano had defaulted on their *Gomez* claims by failing to object to the voir dire procedure at trial, on direct appeal, or in a motion to recall the mandate. It further held that the petitioners had shown neither cause nor prejudice to excuse those defaults. English and Tano filed timely appeals.

## B. *United States v. Davis*, No. 92–15368

In January of 1988, Lutrell Davis was tried in the United States District Court for the District of Hawaii, on charges of mailing threatening communication and threatening to assault or murder a federal judge. A federal magistrate presided over jury selection, and Davis did not raise any objection to the procedure. The jury convicted Davis, and the district court sentenced him to 20 years imprisonment.

Davis appealed, but he did not claim on appeal that the district court erred in allowing the magistrate to preside over voir dire. On May 31, 1989, this court affirmed Davis's conviction. *See United States v. Davis*, 876 F.2d 71 (9th Cir.1989). Less than two weeks later, on June 12, 1989, the Supreme Court issued its decision in *Gomez*. Davis filed a petition for certiorari on July 31, 1989. His petition did not contain a *Gomez* claim. The Supreme Court denied the writ of certiorari on October 2, 1989.

On September 29, 1989, before the Supreme Court had denied his petition for certiorari, Davis filed in the district court a motion for a new trial under 28 U.S.C.

§ 2255. He alleged that the district court had committed reversible error by delegating jury selection in his case to a federal magistrate.[2] The district court granted Davis's petition on January 17, 1992. It held that Davis's failure to raise the *Gomez* claim on direct review or in a motion to recall the mandate was excused because (1) a consistent line of Ninth Circuit authority prior to *Gomez* made any objection to the voir dire procedure futile; (2) Davis could not have raised this issue for the first time in his petition for certiorari; and (3) this court's procedures following the Loma Prieta earthquake prevented Davis from moving to recall the mandate. The district court also held that the procedural default rules set forth in *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), do not apply here, because Davis filed his § 2255 petition before his conviction was final on direct appeal. The government filed a timely appeal.

## Discussion

■ The claim asserted by English, Tano, and Davis is a simple one: that the district court committed reversible error by allowing a magistrate judge to preside over voir dire at their trials without their consent. After *Gomez*, this claim is clearly meritorious. If we may reach the merits of the claim, we must direct the district court to vacate the verdicts and grant English, Tano, and Davis new trials. The government does not contest these facts.[3] The government simply argues that the defendants procedurally defaulted their *Gomez* claims when their attorneys decided to raise the claims in the district court on motions for § 2255 relief, rather than raising them for the first time in petitions for certiorari in the Supreme Court or in motions to recall the mandate. The government further contends that English, Tano, and Davis have not shown cause and prejudice to excuse their purported defaults, and thus

ond ground, at least, is frivolous if not sanctionable.

**2.** As noted in note 1, *supra*, the third ground is clearly erroneous.

**3.** Nor does it argue that any principle of nonretroactivity prevents us from reaching the merits in this case. Because *Gomez* was decided before the petitioners' convictions were final, they are entitled to the benefit of that decision. *See United States v. France*, 886 F.2d 223, 227 (9th Cir. 1989).

that the district court had no discretion to consider their claims. We conclude that English, Tano, and Davis did not default on their claims. There was thus no need for them to show cause and prejudice.

### A. *Legal Standard*

Although the petitioners and the government have largely framed their arguments around the question whether cause and prejudice exists for the petitioners' failure to raise their *Gomez* claims on direct review, we must first face an antecedent · question: whether the failure to raise the claims constituted a procedural default. Only if English, Tano, and Davis defaulted on their claims can we require them to show cause and prejudice.

■ A prisoner defaults on a claim only when he fails to comply with an applicable procedural rule. The cases discussing procedural default in the context of federal habeas corpus for *state* prisoners (in which the procedural default doctrine has mainly developed) make this point clear. As the Supreme Court explained in *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), in the § 2254 context the procedural default doctrine is merely a specific application of the general adequate and independent state grounds doctrine. *See id.* at 729–31, 111 S.Ct. at 2554. Thus, a federal habeas court will find a default in a § 2254 case—and apply the cause and prejudice standard—*only* if "the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley,* — U.S. —, —, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992).

■ Absent a state procedural rule which requires a defendant to raise a particular claim under penalty of default, federal courts in § 2254 proceedings will not find a procedural bar simply because the petitioner failed to raise the claim at trial or on appeal. For example, in *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), the Supreme Court refused to find that the petitioner had procedurally defaulted on a challenge to his jury instructions simply because he failed to object at trial. The Court explained that "under North Carolina law at the time, a

contemporaneous objection at trial was not necessary to preserve for review a question involving jury instructions." *Id.* at 7 n. 4, 104 S.Ct. at 2906 n. 4. Similarly, in *Maxwell v. Sumner,* 673 F.2d 1031 (9th Cir.), *cert. denied,* 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982), we refused to apply the cause and prejudice standard when there was no state rule which required the defendant to raise his claim on direct appeal to the state supreme court. In a scholarly and thorough opinion authored by Judge Norris, we explained that it is only the violation of a state procedural rule, and not the mere failure to raise a claim, that triggers the procedural default doctrine. *See id.* at 1033–34. The Seventh Circuit reduced this principle to a useful aphorism: " '[P]rocedural default' requires the by-pass of a procedural requirement, and not merely the by-pass of a procedural opportunity." *Brownstein v. Director, Illinois Department of Corrections,* 760 F.2d 836, 841 n. 2 (7th Cir.) (citing *Maxwell* with approval), *cert. denied,* 474 U.S. 858, 106 S.Ct. 166, 88 L.Ed.2d 138 (1985).

The same principle applies in § 2255 cases. Unless the defendant has violated some rule which required him to raise a claim or forfeit it, there is no procedural default, and the cause and prejudice standard does not apply. This point is clear from an examination of the only two § 2255 cases in which the Supreme Court has ever invoked the cause and prejudice requirement. *See United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). In each of these cases, the Court found a procedural default and applied the cause and prejudice standard only after the defendant had violated a specific procedural rule by failing to raise his claim. In *Frady,* the petitioner alleged that the trial court had erroneously instructed the jury on the question of malice. He raised this claim for the first time in his § 2255 motion. Because Frady failed to comply with Rule 30 of the Federal Rules of Criminal Procedure, which required a party to raise any objections to jury instructions "before the jury retires to consider its verdict," the Supreme Court held that he had procedurally defaulted his claim. *See Frady,*

456 U.S. at 162–64, 102 S.Ct. at 1591–93. The Court's decision in *Frady* rested on the application of Rule 30's specific procedural requirement. Only after the defendant violated that requirement did the Supreme Court find a procedural default.[4]

In *Davis,* the Supreme Court made even more clear that it was the defendant's violation of a specific procedural rule—and not his mere failure to raise a claim—that compelled the finding of a procedural default. In his § 2255 proceeding, Davis alleged for the first time that African–Americans had been systematically excluded from the grand jury which indicted him. Because Rule 12(b)(2) of the Federal Rules of Criminal Procedure provided that "objections based on defects in the institution of the prosecution or in the indictment" must be raised "by motion before trial" on penalty of waiver, the Supreme Court held that Davis had defaulted his claim. *See Davis,* 411 U.S. at 236–38, 93 S.Ct. at 1579–81. Then–Justice Rehnquist's opinion for the Court expressly distinguished *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). In *Kaufman,* the Court had held that § 2255 relief is available to prisoners raising constitutional claims—whether or not they asserted those claims on direct review—unless the defendant deliberately bypassed prior opportunities to raise the claim. *See id.* at 220 n. 3, 223, 89 S.Ct. at 1070–71 n. 3, 1072. The *Davis* Court noted that Kaufman's Fourth Amendment claims were not subject to the cause and prejudice requirement because, unlike Davis's challenges to the composition of his grand jury, search and seizure claims are not subject to "the sort of express waiver provision contained in Rule 12(b)(2) which specifically provides for the waiver of a particular kind of constitutional claim if it is not timely asserted." *Davis,* 411 U.S. at 239–40, 93 S.Ct. at 1581.

As *Davis* makes clear, the cause and prejudice standard is limited to cases in which the petitioner has *defaulted* a claim by failing to comply with some procedural rule. Moreover, it is important to note that the procedural rule must have been in existence *at the time* of the alleged default. If the petitioner's failure to raise a claim did not violate any then-existing rule, he did not commit a procedural default, and the cause and prejudice standard does not apply. *See Sanchez v. United States,* 782 F.2d 928, 935 n. 3 (11th Cir.1986); *see also Reed v. Ross,* 468 U.S. at 7 n. 4, 104 S.Ct. at 2905–06 n. 4 (refusing to find a procedural default in a § 2254 case, despite the petitioner's failure to raise a claim on direct review, because *"under North Carolina law at the time,* a contemporaneous objection at trial was not necessary" to preserve the issue for review) (emphasis added). As the Supreme Court explained most recently in *Ford v. Georgia,* 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1993), it is grossly unfair—and serves none of the purposes of respect for procedural rules—to forfeit an individual's constitutional claim because he failed to follow a rule that "was not firmly established at the time in question." *Id.* at 425, 111 S.Ct. at 858. Before we can consider whether English, Tano, and Davis have shown cause and prejudice, the government must point us to some firmly established procedural rule which required them to raise their *Gomez* claim at trial or on direct review.

### B. *Analysis*

The government asserts that English, Tano, and Davis each committed two procedural defaults—first by failing to object in the trial court to the magistrate's presiding over voir dire, and second by failing to assert

---

4. The *Frady* court's use of the term "double procedural default," apparently to refer to Frady's failure to raise the claim on appeal after he did not assert it before the jury retired, does not change this analysis. The Supreme Court's decision to find a procedural default rested on its conclusion that Frady had violated Rule 30 at trial. Because Frady did not correct his violation of Rule 30 on appeal by raising the issue as plain error under Rule 52(b), the Court found a second procedural default. However, Frady's

violation of a procedural rule at trial was essential to the Court's conclusion that he had violated Rule 52(b) on appeal. *See Frady,* 456 U.S. at 163, 102 S.Ct. at 1592. The Court did not suggest that it would ever find a *single* procedural default where the defendant simply failed to raise a claim on appeal, absent some violation of a procedural rule in the district court. Any such suggestion would have been inconsistent with *Davis,* on which the *Frady* Court relied. *See infra.*

this claim on direct appeal prior to our denial of the petition for rehearing, in the petition for certiorari in the Supreme Court, or in a subsequent motion to recall the mandate. However, we conclude that the petitioners did not violate any procedural rule which was in effect at the time of these purported defaults. We will address each purported default in turn.

### 1. Failure to Object in the Trial Court

We conclude that the petitioners' failure to object in the trial court to the voir dire procedure did not constitute a procedural default. English, Tano, and Davis's trials all took place before *Gomez* was decided. As we explained in *France,* any objection at the time of their trials would have been futile, because "a 'solid wall of circuit authority'" prior to *Gomez* had held that it was not error for magistrates to conduct voir dire in felony trials. *France,* 886 F.2d at 228 (quoting *Guam v. Yang,* 850 F.2d 507, 512 n. 8 (9th Cir.1988) (en banc); *United States v. Scott,* 425 F.2d 55, 57–58 (9th Cir.1970) (en banc)). Because it would be pointless (and indeed wasteful) to require a defendant to raise such a futile objection in the district court, we held in *France* that, at least in cases that were tried before *Gomez* was decided, a defendant did not forfeit a *Gomez* claim merely by failing to raise an objection in the trial court. *See id.* at 227–28. Accordingly, English, Tano, and Davis's failure to object in the trial court does not prevent us from reaching the merits of their claims.[5]

### 2. Failure to Raise the Claim on Appeal

We also conclude that English, Tano, and Davis did not commit a procedural default by failing to raise their claims on direct appeal prior to our denial of the petition for rehearing, in their petitions for certiorari in the Supreme Court, or in a subsequent motion in this court to recall the mandate. Initially, we note that the petitioners' failure to raise their claims on direct appeal to this court is excused for the same reason as the failure to raise the claims in the trial court. We decided all of the petitioners' direct appeals before the Supreme Court handed down its decision in *Gomez.* Thus, it would have been futile for English, Tano, and Davis to challenge the jury selection procedures on their direct appeals.

The only question we must face, then, is whether English, Tano, and Davis committed a procedural default by failing to raise their *Gomez* claims in petitions for certiorari or motions to recall the mandate in this court. We find no rule which required the petitioners to raise these claims in such a manner. (This is not surprising, because the filing of a petition for certiorari or a motion to recall the mandate is ordinarily unnecessary to exhaust one's remedies). Moreover, we conclude that the petitioners did not deliberately bypass the available means of seeking relief on direct review.

At least as of 1989 (when the petitioners' convictions became final), we adhered to the rule enunciated in *Kaufman,* that § 2255 relief "cannot be denied solely on the ground that relief should have been sought by appeal to prisoners alleging constitutional deprivations." *Kaufman,* 394 U.S. at 223, 89 S.Ct. at 1072. Under *Kaufman,* a federal prisoner's failure to raise a constitutional claim on direct appeal does not constitute a procedural default unless it amounts to a "deliberate by-pass." *Id.* at 220 n. 3, 89 S.Ct. at 1071 n. 3. Thus, it has been the general rule in this circuit that "constitutional claims may be raised in collateral proceedings even if the defendant failed to pursue them on appeal." *United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir.1984) (per curiam) (citing *Davis v. United States,* 417 U.S. 333, 345 n. 15, 94 S.Ct. 2298, 2305 n. 15, 41 L.Ed.2d 109 (1974); *Marshall v. United States,* 576 F.2d 160, 162 (9th Cir.1978)), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985).[6]

---

**5.** Similarly, because the petitioners' trials occurred before *Gomez* corrected this circuit's erroneous rule that a magistrate could preside over jury selection in a felony trial, their failure to object cannot be taken as consent to the magistrate's conduct of voir dire. *See United States v.*

*Gamble,* 943 F.2d 1030, 1031 (9th Cir.1991) (per curiam).

**6.** Although the sentence quoted from *Schaflander* did not specify under what standard a petitioner may bring a constitutional claim on a § 2255 petition (cause and prejudice or deliberate by-

We have recognized that *Frady* and *Davis* "carved out a class of constitutional claims" that are not subject to the general rule identified in *Schaflander* and *Kaufman*. *United States v. Spawr Optical Research, Inc.*, 864 F.2d 1467, 1471 (9th Cir.1988). However, we have also noted that *Frady* and *Davis* by their terms apply only to claims "that run afoul of express waiver provisions." *Id.; see also United States v. Corsentino*, 685 F.2d 48, 50 (2d Cir.1982) ("*Frady, [Wainwright v.] Sykes*, and *Sykes*s predecessors, *Davis v. United States* and *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), concerned the limited scope of collateral attack to raise errors that were required to have been asserted at or before trial by federal or state contemporaneous objection rules.") (citations omitted). Where no procedural rule explicitly requires a constitutional claim to be raised at trial or on direct appeal, "we have 'not held that the mere failure to raise a constitutional claim on direct review constitutes a procedural default and thus prevents consideration of the issue in a collateral proceeding absent a showing of cause and prejudice.'" *Chambers v. United States*, 22 F.3d 939, 945 (9th Cir.1994) (quoting *United States v. O'Mara*, 827 F.Supp. 1468, 1472 (C.D.Cal.1993)).[7]

To be sure, two of our cases have included language that could be read as suggesting that a procedural default occurs when a defendant fails to avail himself of an opportunity to raise a claim on appeal. *See United States v. Dunham*, 767 F.2d 1395, 1397 & n. 2 (9th Cir.1985); *Abatino v. United States*, 750 F.2d 1442, 1445 (9th Cir.1985). However, these cases did not hold that the mere failure to raise a claim on direct review—absent a specific procedural rule which required the defendant to raise it—constitutes a procedural default. In fact, they dealt with precisely the same issue addressed in *Frady*—whether a petitioner may raise a challenge to an erroneous jury instruction in a § 2255 proceeding, when he failed to object before the jury retired as required by Federal Rule of Criminal Procedure 30. In *Abatino*, the petitioner's § 2255 motion contended that the district court's instructions had placed undue pressure on jurors to reach a fast verdict. Because the petitioner violated Rule 30 by failing to object to the jury instruction at trial, and then failed to allege plain error on direct appeal, we held that the cause and prejudice requirement applied to bar his claim. *See Abatino*, 750 F.2d at 1445.[8] In *Dunham*, the petitioner claimed that a supplemental instruction given in response to an inquiry from the jury improperly directed a verdict against him on the mens rea element of his offense. *See United States v. Dorri*, 15 F.3d 888, 891 (9th Cir. 1994) (applying Rule 30 in this situation). Although our opinion included language which could be construed as requiring the application of the cause and prejudice stan-

---

7. As we noted in *Chambers*, "[o]ur analysis has been consistent with the approach the Second Circuit took in *Corsentino*.... As *Schaflander* and *O'Mara* make clear, we have not held that the failure to raise a claim, absent a rule requiring it to be raised or waived, constitutes a procedural default." *Id.* at 945.

8. Like *Frady, Abatino* (and *Dunham*) included dictum stating that the petitioner had committed a second procedural default by failing to correct his violation of Rule 30 on direct appeal by raising the claim as plain error. Like the identical dictum in *Frady*, this statement in *Abatino* (and *Dunham*) does not suggest that even a *single* procedural default occurs where, as here, no rule required the defendant to raise the issue at trial, and the defendant later failed to assert it on direct review. Indeed, *no case* in this circuit has ever held that the mere failure to raise a claim on direct review constitutes a procedural default in that situation.

pass), it is clear that the *Schaflander* court was endorsing the *Kaufman* rule. *Kaufman* sets forth a general rule that constitutional claims may be raised on collateral proceedings even if the defendant failed to raise them on appeal. This rule is subject to an *exception* for cases where the government shows that the defendant committed a deliberate bypass. In cases in which the cause and prejudice standard applies, by contrast, the general rule is that constitutional claims may *not* be raised in collateral proceedings if they were defaulted on direct appeal. This rule is subject to an exception if the *petitioner* shows cause and prejudice. Our language in *Schaflander* is far more consistent with the *Kaufman* rule than the cause and prejudice rule. Moreover, the two cases cited by the *Schaflander* court in support of this statement both rely on *Kaufman*. *See Davis*, 417 U.S. at 345 n. 15, 94 S.Ct. at 2304–05 n. 15 (citing *Kaufman*, 394 U.S. at 223, 89 S.Ct. at 1072); *Marshall*, 576 F.2d at 161 (citing *Kaufman*).

dard applies whenever a petitioner fails to raise a claim at trial or on appeal, *see Dunham,* 767 F.2d at 1397, our decision was again bottomed on the narrow rule announced in *Frady*—that the failure to object to a jury instruction as required by Rule 30 constitutes a procedural default which bars collateral review absent a showing of cause and prejudice.[9]

At least as of 1989, then, this circuit applied the rule set forth in *Kaufman,* as embellished in *Frady* and *Davis.*[10] We imposed no general requirement that federal defendants raise constitutional claims on direct appeal. Only if the defendants deliberately bypassed direct review, or violated some specific procedural rule requiring a particular claim to be raised at a certain time, did we find a procedural default. We note that one circuit has held that the cumulative effect of a trilogy of recent Supreme Court decisions involving 28 U.S.C. § 2254 [11] was to overrule *Kaufman* and imposed a general requirement that federal defendants raise their claims on direct review or forfeit them. *See*

*Campino v. United States,* 968 F.2d 187, 190 (2d Cir.1992). While it is far from obvious that the recent Supreme Court decisions—which all involve state court proceedings and all deal with quite different issues from the question resolved by *Kaufman*—in fact overrule *Kaufman,* we need not face this question here. In 1989 at least, *Kaufman* was the law of this circuit.

■ The government has not identified any specific procedural rule which required a defendant to raise in a petition for certiorari or a motion to recall the mandate a claim that a magistrate impermissibly conducted voir dire, and we are not able to discover any such rule. Nor are we able to discover any rule which required this claim to be raised at all on direct review. Thus, under *Kaufman,* the petitioners did not commit any procedural default so long as (1) their claim is constitutionally based; and (2) their failure to raise the claim on direct review did not constitute a deliberate bypass. We conclude that the petitioners did not default on their claims.[12]

**9.** A footnote in *Dunham* stated that the petitioner had defaulted a second claim—that there was an error in the trial transcript—by failing to raise it on appeal, even though it obviously could not have been raised at trial. However, the failure to assert this error on appeal constituted a direct violation of Fed.R.App.P. 10(e), which states that "questions as to the form and content of the record shall be presented to the court of appeals." Thus, *Dunham* falls squarely within *Frady*'s rule that the failure to comply with an applicable procedural requirement constitutes a default.

**10.** A case decided after the purported defaults here, *United States v. Johnson,* 988 F.2d 941 (9th Cir.1993), also stated that a defendant who failed to raise a claim on direct appeal must show cause and prejudice in order to assert that claim in a § 2255 proceeding. *See Id.* at 945. Although the petitioner in *Johnson* asserted a claim which no specific procedural rule required him to raise on direct review, *Johnson* does not support a conclusion that English, Tano, and Davis committed a procedural default, for two reasons. First, and most important, *Johnson* was decided in 1993, four years *after* the alleged default in this case. If it did in fact impose the requirement that all claims be brought on direct appeal or be waived, this requirement could not be applied retroactively to forfeit English, Tano, and Davis's claims. Second, our holding in *Johnson* did not rest on procedural default at all. Instead, we denied Johnson's claim because it constituted a "merely conclusory statement," which

we have held to be " 'not enough to require a hearing.' " *Id.* (quoting *United States v. Hearst,* 638 F.2d 1190, 1194 (9th Cir.1980), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981)).

**11.** See *Keeney v. Tamayo–Reyes,* —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (applying the cause and prejudice test to the failure to develop material facts in state court proceedings); *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (applying the cause and prejudice test to all violations of independent and adequate state procedural rules); *McCleskey v. Zant,* 499 U.S. 467, 495–96, 111 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1991) (applying the cause and prejudice test to new-claim subsequent petition cases).

**12.** The government asserts that English committed a default by "ignor[ing] the district court's instruction to file a motion to recall the mandate in this Court." However, English received no such instruction. The district court merely held English's motion in abeyance until his direct appeal was final. It did not direct him to file any motion in any court. We note that the government does not make any similar contention with respect to Tano, although it could certainly have done so with more factual accuracy. In any event, given all of the circumstances present here, we seriously doubt that we would conclude that the district court's order in Tano's case constituted the type of procedural rule contem-

■ We have little difficulty in determining that the petitioners' claims are constitutionally based. As we explained in *France,* the decision in *Gomez* should be treated as a constitutional decision for the purposes of procedural doctrines involving the assertion of constitutional claims: "The Supreme Court, although its decision was, in the end, one of statutory construction, made clear that its holding was compelled by the notion that any other result might well run afoul of the Constitution by authorizing the deprivation of one of the 'basic rights' of a criminal defendant." *France,* 886 F.2d at 226 (citing *Gomez,* 490 U.S. at 863, 871–76, 109 S.Ct. at 2241, 2246–48). Even the Supreme Court's subsequent opinion in *Peretz,* which held that a defendant's consent to a magistrate's conduct of voir dire cures any *Gomez* problem, made clear *Gomez's* constitutional underpinnings. In a footnote explaining why the *Gomez* Court found the constitutional question to be a substantial one, the Court in *Peretz* quoted extensively from *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 848, 106 S.Ct. 3245, 3255, 92 L.Ed.2d 675 (1986), which had "emphasized the importance of the personal right to an Article III adjudicator." *Peretz,* 501 U.S. at 930 n. 6, 111 S.Ct. at 2665 n. 6.[13]

Of course, we do not mean to suggest that the Supreme Court would necessarily have decided the constitutional issue in Gomez's favor had it been unable to construe the statute to avoid the question. However, we believe that when a petitioner raises a substantial constitutional claim (as the petitioners here have surely done), he should not lose his right to collateral review simply because the Supreme Court has mooted the constitutional aspect of the claim by resting on a nonconstitutional ground which favors him. We also believe that it would be inappropriate to render a wholly advisory opinion on the constitutional issue when the Supreme Court has for sound and principled reasons avoided the question. Rather, as in *France,* in which we held that the retroactivity rules governing constitutional claims apply to the *Gomez* holding, we conclude that a petitioner raising a *Gomez* claim is entitled to the benefit of the procedural doctrines which govern the assertion of constitutional claims in § 2255 proceedings.

■ Moreover, even if there is no constitutional right to have an Article III judge rather than a magistrate conduct voir dire, a defendant has a basic right "to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside." *Gomez,* 490 U.S. at 877, 109 S.Ct. at 2248. This right, rooted in due process, is itself constitutional in status, as the *Gomez* Court made clear by analogizing it to such "basic fair trial rights" as "a defendant's 'right to an impartial adjudicator, be it judge or jury.'" *Id.* (quoting *Gray v. Mississippi,* 481 U.S. 648, 668, 107 S.Ct. 2045, 2056, 95 L.Ed.2d 622 (1987)).[14] We join our fellow circuits which have adopted this reading of *Gomez* and held that the right to have all stages of a criminal trial conducted by a person with jurisdiction to preside is a constitutional right. *See United States v. Chantal,* 902 F.2d 1018, 1021 n. 4 (1st Cir.1990); *Matter of Hipp, Inc.,* 895 F.2d 1503, 1521 (5th Cir.1990); *see also United States v. Baron,* 721 F.Supp. 259, 261–62

plated by *Ford v. Georgia,* 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991).

**13.** The *Peretz* Court quoted the following passage from *Schor:*

Article III, § 1 serves both to protect "the role of the independent judiciary within the constitutional scheme of tripartite government," and to safeguard litigants' "right to have claims decided before judges who are free from potential domination by other branches of government." Although our cases have provided us with little occasion to discuss the nature or significance of this latter safeguard, our prior discussions of Article III, § 1's guarantee of an independent and impartial adjudi-

cation of matters within the judicial power of the United States intimated that this guarantee serves to protect primarily personal, rather than structural, interests.

*Peretz,* 501 U.S. at 930 n. 6, 111 S.Ct. at 2665–66 n. 6 (quoting *Schor,* 478 U.S. at 848, 106 S.Ct. at 3255) (citations omitted).

**14.** Of course, the right to an impartial adjudicator is a constitutional right. The *Gray* Court made this clear by referring to "the constitutional right to an impartial jury" and by citing *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (holding that there is a constitutional right to an impartial judge), both on the same page to which the *Gomez* Court cited. *See Gray,* 481 U.S. at 668, 107 S.Ct. at 2056–57.

(D.Hawaii 1989) (holding that a violation of this right "undermin[es] the fundamental fairness of a felony trial").[15] At the very least, the petitioners here are asserting the constitutional right to have voir dire conducted by an officer with jurisdiction.

■ We also cannot conclude that English, Tano, and Davis deliberately bypassed direct review. In order to find a deliberate bypass, we must find that the petitioners themselves—and not merely their counsel—made a knowing, intelligent, and voluntary decision to forego presenting the claims on direct review. As the Supreme Court explained when it set forth the deliberate bypass standard in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), we may hold that a defendant deliberately bypassed direct review only if the bypass satisfies "[t]he classic definition of waiver enunciated in *Johnson v. Zerbst*, [304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) ]—'an intentional relinquishment or abandonment of a known right or privilege.'" *Id.* at 439, 83 S.Ct. at 849. We will only find a deliberate bypass where "a habeas applicant, after consultation with competent counsel or otherwise, understandably and knowingly forewent the privilege" of pursuing his claims on direct review. *Id.* When applying this standard, "[a] choice made by counsel not participated in by the petitioner does not automatically bar relief." *Id.* Rather, we will find a deliberate bypass only if the failure to pursue appellate remedies results from "the considered choice of the petitioner." *Id.*

The government has not satisfied its burden of showing a deliberate bypass here. Although it is clear that the petitioners' *attorneys* made a conscious decision to pursue the *Gomez* claims in § 2255 proceedings rather than on direct review,[16] the record is devoid of any evidence that the petitioners *themselves* had any input into this decision. A decision of this character—whether to pursue a particular claim in the Supreme Court on a petition for certiorari, in this court on a motion to recall the mandate, or in a district court on a § 2255 motion—is one that is typically made by the lawyer, not the client. Nothing in the record suggests that the typical practice was not followed in this case.

Even if the petitioners were consulted, we would be quite surprised if they had any understanding of the relevant differences between pursuing the claim on direct appeal and filing a § 2255 motion. The choice of forum in this case appears to have resulted from purely legal considerations. The attorneys for English and Tano contend that they failed to pursue the claim in their petition for certiorari because they believed that Supreme Court rules prevented them from raising the issue in that court for the first time, and that they failed to move this court to recall the mandate because they believed that the claim was a jurisdictional one that could be addressed in a § 2255 motion in the first instance.[17] Although the petitioners' attorneys may have erred in this assessment (a conclusion on which we express no view), the government must make a far stronger showing before we would conclude that the petitioners themselves had sufficient knowledge and understanding of these issues to satisfy the *Johnson v. Zerbst* waiver standard.

Indeed, our conclusion that the petitioners did not make a knowing, intelligent, and voluntary decision to forego direct appeal would only be *strengthened* if we were to decide

---

**15.** At least one circuit has suggested that *Gomez* announced a constitutional right to have all critical stages of a felony trial conducted by a person with jurisdiction to preside *over the entire proceeding. See United States v. Vanwort*, 887 F.2d 375, 378 (2d Cir.1989). We need not go so far here, however.

**16.** In English and Tano's cases, the district judge made the following finding:
These movants bypassed the opportunity to seek relief on this issue on direct appeal. In fact, they deliberately chose not to comply with this court's order that they do so. At the very least, there was available to each movant a motion to recall the mandate in his direct appeal. Instead, movants elected to rely on their contention that *Gomez* error was "jurisdictional."
*United States v. English*, 777 F.Supp. 791, 793 (D.Hawaii 1991). Because Davis was represented by the same attorney as English, the second part of the finding would appear to apply to his case as well.

**17.** As noted above, the district court explicitly found that the latter reason motivated the choice of forum in this case. *See supra* note 16.

that their attorneys erred in choosing to pursue the claim in the district court. Defendants ought not to be expected to understand the complex web of procedural rules that now regulates the time and place in which a party may raise a meritorious claim. They must rely on their attorneys to advise them accurately regarding the risks and consequences of choosing to pursue the claim in one forum rather than another. Where an attorney erroneously advises a defendant that he is not required to raise a claim on direct appeal, we cannot say that the defendant deliberately bypassed direct review.

■ We conclude that English, Tano, and Davis did not deliberately bypass the opportunities to raise their *Gomez* claims on direct review. We also conclude that there was no specific procedural rule which required them to assert the claim in petitions for certiorari or motions to recall the mandate. Accordingly, they did not procedurally default on their claims. Thus, the cause and prejudice analysis is inapplicable here. The district court was required to reach the merits of English, Tano, and Davis's claims. Had it done so, it would have been obliged to rule in the petitioners' favor.

### Conclusion

The judgment of the district court in *English v. United States*, No. 91–16442, and *Tano v. United States*, No. 91–16500, is REVERSED. The judgment of the district court in *United States v. Davis*, No. 92–15368, is AFFIRMED.

JAMES R. BROWNING, Circuit Judge, concurring:

I write separately because I believe the majority's reasoning conflicts with Ninth Circuit precedent. I concur in the judgment because a different analysis consistent with our precedent leads to the same result.

### I.

The majority interprets *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), as holding federal defendants who seek to attack their convictions collaterally must show "cause" for, and "actu-

al prejudice" from, their failure to raise their constitutional claim *only* if they have also violated a specific rule providing the particular claim will be barred if not raised during the direct criminal proceedings. Based on this interpretation of *Frady*, the majority concludes English, Tano, and Davis were not required to show cause and prejudice to collaterally challenge their convictions on the basis of *Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), despite their failure to raise this issue on appeal or otherwise in their direct criminal proceedings, because there was no rule providing such claims were forfeited unless they were raised during the direct proceedings.

Our circuit has already interpreted *Frady* as requiring federal defendants who fail to seek review of an issue on appeal in direct proceedings to show cause and prejudice for that default in order to pursue collateral relief, without regard to whether they also violated an express waiver provision. In *United States v. Dunham*, 767 F.2d 1395, 1397 & n. 2 (9th Cir.1985), we held in reliance on *Frady* that a collateral attack based on an alleged omission from the trial transcript and a faulty jury instruction was barred by the cause and prejudice standard *solely* because the defendant failed to raise these challenges on direct appeal. The majority points to Federal Rule of Appellate Procedure 10(e) and Federal Rule of Criminal Procedure 30 as special procedural rules requiring that these claims be raised in the course of the criminal proceedings. Majority Op. at 480–81 & n. 9. Neither rule is mentioned in the *Dunham* opinion. There is nothing to suggest the court relied upon them in concluding that under *Frady* failure to raise an issue on direct appeal was itself a default sufficient to trigger the requirement that cause and prejudice be shown to obtain collateral review.

Even if the majority's distinction of *Dunham* is accepted, our decision in *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir.1993), commits this court to the position that failure to appeal in itself requires a showing of cause and prejudice to justify a collateral attack. *Johnson* relied on *Frady* in requiring a showing of cause and prejudice

even though, as the majority concedes, there was no statute or procedural rule requiring defendant to raise in the direct proceedings the issue he sought to raise collaterally—the sufficiency of the evidence supporting his conviction. The default that triggered the requirement that cause and prejudice be shown in *Johnson* was clearly no more than failure to raise the issue on direct appeal.

The majority seeks to avoid this conclusion by characterizing *Johnson*'s interpretation of *Frady* as dicta and arguing that, if not disregarded on this ground, it established a "new rule" that should not be applied retroactively. Neither argument is persuasive. First, *Johnson* denied defendant's 28 U.S.C. § 2255 motion *both* because his pleadings were conclusory and because he failed to show cause and prejudice. *See* 988 F.2d at 945. Alternative holdings are not dicta. *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 537, 69 S.Ct. 1235, 1236–37, 93 L.Ed. 1524 (1949) ("where a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*"); *Kimble v. D.J. McDuffy, Inc.*, 454 U.S. 1110, 1113 n. 4, 102 S.Ct. 687, 689 n. 4, 70 L.Ed.2d 651 (1981) (White, J., dissenting from denial of certiorari) (alternative holdings do not mitigate precedential effect of a federal appellate decision). Second, the issue of retroactivity is not presented: *Dunham* and *Johnson* did not establish a new rule. Both simply interpreted and followed the rule announced in *Frady*, which applies here as well.

The majority develops a substantial argument that *Frady* is more limited than the panels that decided *Dunham* and *Johnson* found it to be. A three-judge panel does not sit in review of decisions of prior three-judge panels. We would be bound to follow the interpretation in *Dunham* and *Johnson* of the rule established in *Frady*, even if we thought those panel decisions were wrong. *See, e.g., United States v. Mandel*, 914 F.2d 1215, 1221 (9th Cir.1990) (circuit precedent that allegedly conflicts with prior Supreme Court authority is nevertheless binding on three-judge panel).

The comment in *Clow v. U.S. Dep't of Housing & Urban Dev.*, 948 F.2d 614 (9th Cir.1991) (per curiam), is especially pertinent:

> The [majority] does not argue that an intervening Supreme Court decision has cast doubt on our prior circuit law, rather it asserts that the very Supreme Court decision upon which these cases rely does not support their holdings. If we were all free to disregard our prior circuit law based on our own predilections as to whether these decisions properly construe the Supreme Court cases upon which they rely, the doctrine of stare decisis would have little meaning in our circuit.

*Id.* at 616 n. 2.

## II.

I agree with the majority that these cases call for a remedy. If the merits can be reached, reversal is required. The obstacles to doing so are technical and formal, and protect little of substance. They should be surmounted if possible.

*Frady*'s holding that failure to raise constitutional issues during appellate review in the direct proceeding bars collateral challenge absent cause and prejudice was based principally on the government's interests in the finality of criminal judgments and in avoiding lengthy delays often associated with collateral review. This central rationale is inapplicable to this case. As the majority opinion states, all three appellants filed petitions raising *Gomez* claims before their convictions became final. English and Davis raised the *Gomez* claim in motions under § 2255 filed in the district court before the Supreme Court denied certiorari in their direct appeals. Tano filed his motion raising the *Gomez* issue after certiorari was denied but before expiration of the time to file a petition for rehearing of the denial.[1]

---

1. *See Griffith v. Kentucky*, 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 712 n. 6, 93 L.Ed.2d 649 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."); Sup.Ct.R. 44.2 (providing 25 days for petitions for rehearing of a denial of certiorari).

It would have been preferable if English, Tano, and Davis had raised their *Gomez* claims in motions in this court to recall the mandates. However, the defendants' failure to follow the preferable course does not require that we consider their motions as collateral attacks. Although filing a motion under § 2255 while direct criminal proceedings are pending in another forum is discouraged, the limitation is not jurisdictional. *United States v. Taylor*, 648 F.2d 565, 572 (9th Cir. 1981) (citing cases).[2] Furthermore, federal courts are not so bound by form that papers filed in one forum can never be considered as though filed in another.[3] As we have noted, appellants filed their motions raising the *Gomez* issue before the direct criminal proceedings were concluded, and those motions are now before us on appeal from the district court. But for the detour through district court, the paper record in this court is virtually the same as if defendants had filed their motions in this court as motions to recall our mandates.

In *United States v. France*, 886 F.2d 223 (9th Cir.1989), *aff'd by an equally divided Court*, 498 U.S. 335, 111 S.Ct. 805, 112 L.Ed.2d 836 (1991), we permitted the defendant to raise a *Gomez* claim in a supplemental brief on direct appeal, even though the claim was not raised below or in the defendant's opening brief on appeal. *Id.* at 225. We excused these defaults on the ground that it would have been futile for the defendant to raise the issue prior to the *Gomez* decision because this circuit had repeatedly rejected the argument that defendants tried before juries selected under the supervision of an unauthorized magistrate judge are entitled to new trials. *Id.* at 227–28. We reversed France's conviction on the ground that *Gomez* applies to all cases not yet final at the time of the Supreme Court's decision. *Id.* at 227.

Under *France* and *Gomez*, the defendants in this case are entitled to new trials unless a distinction should be drawn between raising a *Gomez* claim in a supplemental brief and raising it in a form equivalent to a motion to recall our mandate. Because such a distinction would exalt form over substance and unjustly deny the benefit of our decision in *France* to the defendants, I concur in the judgments directing that English, Tano, and Davis be tried anew.

---

2. In an analogous context, federal defendants may seek new trials in district court before completion of their direct appeals. *See United States v. Cronic*, 466 U.S. 648, 667 n. 42, 104 S.Ct. 2039, 2051 n. 42, 80 L.Ed.2d 657 (1984) ("[t]he District Court ha[s] jurisdiction to entertain [a Rule 33] motion and either deny the motion on its merits, or certify its intention to grant the motion to the Court of Appeals, which could then entertain a motion to remand the case").

3. *Cf., e.g., Miller v. Hambrick*, 905 F.2d 259, 262–63 (9th Cir.1990) (transferring a federal prisoner's 28 U.S.C. § 2241 petition to a district court with jurisdiction); Fed.R.App.P. 4(a)(1) (providing that a notice of appeal mistakenly filed in the court of appeals should be treated as though correctly filed in the district court).