**Richard Donald CHAMBERS, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee (Two Cases).**

Nos. 93–55780, 93–56031.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1993.

Decided April 25, 1994.

casioned by Farris's failure to admit he was negligent based on his removal of the collar.

Deborah Lewis, Deputy Federal Public Defender, Los Angeles, CA, for petitioner-appellant.

Daniel P. Collins, Asst. U.S. Atty., Los Angeles, CA, for respondent-appellee.

Before: REINHARDT and T.G. NELSON, Circuit Judges, and KAUFMAN,* District Judge.

Opinion by Judge KAUFMAN.

FRANK A. KAUFMAN, Senior District Judge:

Defendant-appellant Richard Chambers has filed two appeals from the denial of his motions made pursuant to 28 U.S.C. Sec. 2255 to set aside his two convictions for receipt of child pornography, in violation of 18 U.S.C. § 2252. Chambers asserts that the district courts erred in denying his petitions because this court has declared the statute under which he was convicted, namely 18 U.S.C. § 2252, unconstitutional in *U.S. v. X–Citement Video*, 982 F.2d 1285 (9th Cir.1992), a case decided after Chambers' two aforementioned convictions. We conclude that Chambers is entitled to the benefit of the retroactive application of *X–Citement Video*.

## FACTS

Defendant-appellant Richard Chambers challenges his two convictions for receipt of child pornography in violation of 18 U.S.C. § 2252.[1] On September 2, 1986, Chambers pled guilty to a two-count information charging him with the receipt of child pornography under 18 U.S.C. § 2252(a)(2). He was sentenced to a five-year term of imprisonment followed by five years of probation. While on probation, Chambers was again charged, in an indictment, for violating § 2252 on April 30, 1991. On July 22, 1991, Chambers pled guilty to that indictment. On November 22, 1991, he was sentenced to five years in custody, followed by three years of supervised release. He is currently serving that sentence.

On December 16, 1992, in litigation not involving Chambers, this court held that the statute under which Chambers had been convicted, 18 U.S.C. § 2252, is facially unconstitutional because it does not require knowledge of the minority of at least one of the performers as an element of the crime. *U.S. v. X–Citement Video Inc.*, 982 F.2d 1285 (9th Cir.1992).[2]

In light of that decision, Chambers filed a habeas motion to vacate, set aside or correct his November 22, 1991, conviction. The district court denied his motion on April 14, 1993, without prejudice because the government had filed a petition for rehearing with this court in the *X–Citement Video* case. Chambers then filed a motion to reconsider the district court's order denying his habeas petition. The district court subsequently denied that motion to reconsider.

Meanwhile, on April 6, 1993, Chambers filed a second motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed in connection with his November 10, 1986 conviction. The district court denied his petition because the mandate in *X–Citement Video* had not yet issued.

On January 27, 1993, the government, in *X–Citement Video*, filed a petition for rehear-

---

* Honorable Frank A. Kaufman, Senior United States District Judge for the District of Maryland, sitting by designation.

1. By an order dated August 31, 1993, this court granted Chamber's motion to consolidate his appeals because of the similarity in the issues raised.

2. "[T]he First Amendment to the United States Constitution mandates that a statute prohibiting the distribution, shipping or receipt of child pornography require as an element knowledge of the minority of at least one of the performers who engage in or portray the specified conduct. Section 2252, as authoritatively construed by [*United States v.*] *Thomas*, [893 F.2d 1066 (9th Cir.), *cert. denied*, 498 U.S. 826, 111 S.Ct. 80, 112 L.Ed.2d 53 (1990)] does not so require. As a result, *section 2252 is unconstitutional on its face.*" *Id.* at 1292 (emphasis added).

ing with a suggestion for rehearing *en banc*, thereby causing the mandate to be stayed in that case. Thereafter, on July 9, 1993, this Court denied all such relief sought by the government. Currently, however, the mandate in *X–Citement Video* has been stayed because the government filed, on November 5, 1993, a petition for certiorari in the Supreme Court of the United States in that case, which was granted by the Supreme Court on February 28, 1994.

## DISCUSSION

■ The government argues that *X–Citement Video* cannot be applied retroactively to vacate Chambers conviction in the light of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[3] *Teague* holds that new rules of criminal procedure may not be retroactively applied to cases on collateral review unless they fall into one of two narrow exceptions. 489 U.S. at 310, 311, 109 S.Ct. at 1075, 1076.[4]

■ As a threshold matter, we must consider whether *X–Citement Video* announced a new rule. We conclude that it did not. The Supreme Court has "defined new rules as those that were not '*dictated* by precedent existing at the time the defendant's conviction became final.'" *Sawyer v. Smith*, 497 U.S. 227, 234, 110 S.Ct. 2822, 2827, 111 L.Ed.2d 193 (1990) (quoting *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070). Our decision in *X–Citement Video* was dictated by the rule requiring scienter in obscenity prosecutions, a rule which had its origin in *Smith v. California*, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), and has been confirmed by a "long line of authority." *Stringer v. Black*, — U.S. —, —, 112 S.Ct. 1130, 1137, 117 L.Ed.2d 367 (1992). We do not create a new rule when we simply apply "a rule of this general application," *Wright v. West*, — U.S. —, —, 112 S.Ct. 2482, 2499, 120 L.Ed.2d 225 (1992) (Kennedy, J., concurring), to a new set of facts. *See Stringer*, — U.S. at — – —, 112 S.Ct. at 1135–37.

■ Even if *X–Citement Video* could be considered to create a new rule, there is another independent basis for our holding. *Teague's* non-retroactivity principle does not apply to substantive decisions like *X–Citement Video*. The government fails to recognize that we have previously distinguished between new rules of criminal procedure and new substantive decisions rendering invalid a statute under which the person seeking collateral relief was previously convicted and punished. *Teague* does not apply to the latter. *U.S. v. Sood*, 969 F.2d 774, 775–76 (9th Cir.1992); *see also U.S. v. McClelland*, 941 F.2d 999, 1001 (9th Cir.1991). In *Sood*, the two defendants were convicted in Guam of bribery pursuant to 18 U.S.C. § 666. Following their convictions, we held in another case that 18 U.S.C. § 666 applied only to the states and thus did not apply in Guam. *United States v. Bordallo*, 857 F.2d 519 (9th Cir.1988), *amended*, 872 F.2d 334 (9th Cir. 1989), *cert. denied*, 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989). As a result, the defendants sought and received habeas relief in the district court. Relying principally on *Davis v. U.S.*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), we affirmed the district court's orders vacating the convictions. *Sood*, 969 F.2d at 775–76.

In *Davis*, the Supreme Court held that habeas petitioners can use § 2255 motions to challenge convictions obtained under a statute subsequently declared invalid by the circuit courts. The Supreme Court reasoned that to uphold a conviction "for an act that

---

3. We reject the government's argument that *X–Citement Video* is not binding precedent until the mandate issues in that case. In this circuit, once a published opinion is filed, it becomes the law of the circuit until withdrawn or reversed by the Supreme Court or an en banc court. However, we withhold the mandate in the within case until the mandate issues in *X–Citement Video*.

4. The Court in *Teague* stated: "We therefore hold that, implicit in the retroactivity approach we adopt today, is the principle that habeas corpus cannot be used a vehicle to create *new constitutional rules of criminal procedure* unless those rules would be applied retroactively to *all* defendants on collateral review through one of the two exceptions we have articulated." *Teague*, 489 U.S. at 316, 109 S.Ct. at 1078 (emphasis added). The two exceptions are for rules which place certain kinds of primary conduct beyond the power of the law-making authority to proscribe, and watershed rules of criminal procedure. *Id.* at 310, 311, 109 S.Ct. at 1075, 1076.

the law does not make criminal.... 'inherently results in a complete miscarriage of justice' and 'present[s] exceptional circumstances' that justify collateral relief under § 2255." *Id.*, 417 U.S. at 347, 110 S.Ct. at 2305. *See also U.S. v. Addonizio,* 442 U.S. 178, 186–87, 99 S.Ct. 2235, 2241, 60 L.Ed.2d 805 (1979). As a result of *Davis,* "The doors of collateral review are open for petitioners who can show, through an intervening change in the law, that they could not have committed the substantive offense with which they were charged." *Sood,* 969 F.2d at 776.[5]

■ Because our decision in *X–Citement Video* invalidated an entire statute, thereby "affecting the substance of criminal laws," *Teague* does not apply to limit the retroactive application of *X–Citement Video. Id.* at 776.[6] While Congress can surely prohibit the receipt of child pornography by enacting a valid statute with a scienter requirement, as the law stands in this circuit, it has not done so.

In addition, even if *X–Citement Video* is considered to create a new rule, we believe that this case is controlled by the first exception to *Teague's* non-retroactivity. Under that exception, a new rule will be applied retroactively on collateral review "if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Teague,* 489 U.S. at 307, 109 S.Ct. at 1073 (quoting *Mackey v. United States,* 401 U.S. 667, 692, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part)). The rule we enunciated in *X–Citement Video* was that the mere distribution or receipt of child pornography, without knowledge of the performer's age, was protected under the First Amendment

and thus could not be proscribed by the criminal law. Because the statute under which Chambers was convicted, as authoritatively construed in *Thomas,* criminalizes precisely this protected conduct, the rule enunciated in *X–Citement Video* invalidates his conviction.

■ The government argues, erroneously, that *Teague's* first exception applies only in cases where the petitioner invokes a new rule which makes constitutionally protected the specific conduct in which he engaged. Although no case has ever suggested that the exception is so limited, the government relies on a quotation which is taken out of context from Justice Harlan's opinion in *Mackey.*[7] Justice Harlan's *Mackey* opinion, of course, set forth the approach to retroactivity which the Supreme Court adopted in *Teague. See Teague,* 489 U.S. at 310, 109 S.Ct. at 1075 ("[W]e now adopt Justice Harlan's view of retroactivity for cases on collateral review."). Taken as a whole, however, that dissent clearly contemplated that the first exception would apply in a case such as this one.

Specifically, four elements of Justice Harlan's discussion make clear that the exception applies where, as here, the statute under which the petitioner was convicted is subsequently declared unconstitutional on substantive grounds. First, as Justice Harlan explained, this exception serves to limit the nonretroactivity principle to cases involving "new 'procedural due process' rules." *Mackey,* 401 U.S. at 692, 91 S.Ct. at 1180 (Harlan, J., concurring in part and dissenting in part). Where the new rule invalidates the statute under which the defendant is convicted for

5. The reasoning set forth in *Davis* and *Sood* is equally applicable to laws stricken down in overbreadth grounds, the grounds which underpin our holding in *X–Citement Video.* Thus, Chambers's "conviction and punishment are for an act that the law does not make criminal." 417 U.S. at 346, 94 S.Ct. at 2305.

6. The government also relies on *Greenawalt v. Ricketts,* 943 F.2d 1020 (9th Cir.1991), *cert. denied,* — U.S. —, 113 S.Ct. 252, 121 L.Ed.2d 184 (1992), to support its proposition that newly announced scienter requirements should not be

applied retroactively to prior convictions where scienter was not required. However, the court in *Greenawalt* explicitly stated that it was not deciding the retroactivity issue because any such change would not alter the outcome of the case at hand. *Id.* at 1029.

7. *Mackey,* 401 U.S. at 700, 91 S.Ct. at 1184 (Harlan, J., concurring in part and dissenting in part) ("Mackey is not asserting that the conduct for which he is being punished, evading payment of his federal income taxes, has been held to be constitutionally immune from punishment.").

substantive reasons—such as a First Amendment violation—the exception applies.[8]

■ Second, Justice Harlan explained that his nonretroactivity analysis would only apply where the government is "enforcing concededly valid societal proscriptions on individual behavior." *Id.* at 692, 91 S.Ct. at 1180. Where a new rule makes clear the invalidity of the "societal proscription[ ] on individual behavior" which the government seeks to enforce, that rule falls within the first exception. *See id.* While the government *might* validly prohibit the specific behavior in which Chambers engaged, the proscription which it is seeking to enforce here—a statute which prohibits the mere distribution or receipt of child pornography—is concededly *invalid* under *X–Citement Video.*

Third, Justice Harlan stated that the first exception was designed to track the historic scope of the Writ. *See id.* at 692–93 & n. 8, 91 S.Ct. at 1180 & n. 8. As the cases cited by Justice Harlan make clear, one historic purpose of the writ—which he sought to preserve in the first exception—was to free individuals who were convicted under an unconstitutional statute. *See, e.g., Ex parte Siebold,* 100 U.S. 371, 376–77, 25 L.Ed. 717 (1880) ("An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void and cannot be a legal cause of imprisonment.").

Finally, Justice Harlan justified the first exception by noting that issuance of the writ on substantive grounds "entails none of the adverse collateral consequences of retrial" which retroactive application of a new rule of procedure normally creates. *Mackey,* 401 U.S. at 693, 91 S.Ct. at 1180 (Harlan, J., concurring in part and dissenting in part). These collateral consequences are just as unlikely to exist where the statute under which the petitioner was convicted is struck down on its face as they are when the statute

is invalidated as applied. In neither case will the government be entitled to retry the petitioner under the same statute. Because the Supreme Court in *Teague* adopted Justice Harlan's approach to retroactivity, and because Justice Harlan clearly intended for the first exception to apply to cases like this one, we reject the government's argument that it does not apply.

■ We also reject the government's argument that neither *Teague*'s first exception nor the limitation we recognized in *Sood* applies to a First Amendment *overbreadth* claim. The government contends that a habeas petitioner who asserts an overbreadth claim is not asserting his own constitutional rights, but merely those of others who might be chilled by the overbroad statute. Because Chambers is not asserting any right of his own, the government argues, he should not be entitled to the retroactive application of *X–Citement Video.*

We disagree with the government's premise. Chambers is most certainly invoking *his own* constitutional rights. Although the statute under which he was convicted is unconstitutional because of its effect on others, Chambers is asserting the *personal* right not to be convicted and incarcerated under an unconstitutional rule of law. *See Massachusetts v. Oakes,* 491 U.S. 576, 585, 588, 109 S.Ct. 2633, 2639, 2640, 105 L.Ed.2d 493 (1989) (opinion of Scalia, J.).[9] *X–Citement Video* ruled invalid the entire statute which formed the basis for Chambers' conviction. If the unconstitutional part of that statute were severable, then we could adopt a narrowing construction which would reach Chambers' conduct. In such a case, he would have no personal right against being convicted under the statute. *See Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 506–07, 105 S.Ct. 2794, 2803–04, 86 L.Ed.2d 394 (1985).[10] However, we concluded as a matter

---

8. Thus, after the language the government quotes, Justice Harlan concluded that the first exception did not apply because Mackey only alleged *procedural* defects in the conduct of his trial. *See id.* at 701, 91 S.Ct. at 1184 ("Since matters of procedure rather than substance are involved ... I would apply to the resolution of this habeas petition the law in effect at the time Mackey's conviction became final, absent a

showing that the procedures employed were fundamentally unfair.").

9. A majority of the court joined in this section of Justice Scalia's opinion.

10. This discussion assumes that the narrowing construction afforded fair warning to him, *see Dombrowski v. Pfister,* 380 U.S. 479, 491 n. 7, 85

of statutory interpretation in *Thomas* and *X–Citement Video* that section 2252 is *not* severable and thus that it cannot be narrowed by a judicial construction. Chambers' conviction therefore violated his *personal right* not to be incarcerated under an unconstitutional statute.

■ Thus, the government is wrong when it argues that application of the *Sood* doctrine here "equates the release of prisoners convicted under a statute that is later held not to cover their conduct (which involves nothing more than freeing the innocent) with the quite different action of releasing prisoners whose conduct is properly reached by a statute that a court has subsequently determined impermissibly chills the rights of third parties (which involves freeing the guilty)." The defendants in *Sood* were just as "guilty" as Chambers is here, for there is no doubt that Congress *could* "properly reach" the conduct there at issue—bribery in Guam. There, as here, we faced only the question whether Congress had done so through a valid statute. Even though the defendants in *Sood* had engaged in prohibitable and morally blameworthy conduct, we granted collateral relief because Congress had not prohibited their conduct through a valid enactment. Similarly, even if we assume that Chambers' conduct fell within the core of the child pornography exception to the First Amendment, there is no valid statute on the books in this circuit that prohibits it. While perhaps morally "guilty," he is legally innocent. There is no justification for failing to apply the *Sood* doctrine and the first *Teague* exception.

The government contends further, that Chambers waived his right to challenge the validity of his conviction. Specifically, the government argues that Chambers committed a procedural default by failing to raise his constitutional challenge before pleading

guilty or on direct appeal. Thus, the government contends that *United States v. Frady*, 456 U.S. 152, 167, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982), bars review of this claim in a § 2255 proceeding absent a showing of cause and prejudice.

We note that a conflict exists in the circuits regarding whether challenges to guilty pleas are subject to *Frady*'s cause and prejudice requirement. *Compare United States v. Baylin*, 696 F.2d 1030, 1036 (3d Cir.1982) (holding *Frady* inapplicable); *United States v. Corsentino*, 685 F.2d 48, 50 (2d Cir.1982) (same) *with Williams v. United States*, 805 F.2d 1301, 1303–07 (7th Cir.1986) (holding *Frady* applicable), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1978, 95 L.Ed.2d 818 (1987). Although we have not directly addressed this issue, our cases appear to be more consistent with the answer reached by the Second and Third Circuits. Unlike the Seventh Circuit, we have "not held that the mere failure to raise a constitutional claim on direct review constitutes a procedural default and thus prevents consideration of the issue in a collateral proceeding absent a showing of cause and prejudice." *United States v. O'Mara*, 827 F.Supp. 1468, 1472 (C.D.Cal.1993). Rather, we have stated that "constitutional claims may be raised in collateral proceedings even if the defendant failed to pursue them on appeal." *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985).[11]

■ We need not resolve this conflict today, nor must we decide the outer extent of *Frady*. Whatever the scope of the cause and prejudice requirement, it clearly does not bar review when a defendant raises a *jurisdictional* claim, such as the invalidity of the statute under which the defendant was convicted. "Claims that 'the applicable statute is unconstitutional or that the indictment

S.Ct. 1116, 1123 n. 7, 14 L.Ed.2d 22 (1965), and the jury instructions and proof at trial made clear that he was convicted only for conduct which the narrowed statute reached. *See Osborne v. Ohio*, 495 U.S. 103, 122–26, 110 S.Ct. 1691, 1703–05, 109 L.Ed.2d 98 (1990).

11. Our analysis has been consistent with the approach the Second Circuit took in *Corsentino*, 685 F.2d at 50: *"Frady*, [Wainwright v.] Sykes, [433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594

(1977)], and *Sykes'* predecessors ... concerned the limited scope of collateral attack to raise errors that were required to have been asserted at or before trial *by federal or state contemporaneous objection rules."* (emphasis added) (citations omitted). As *Schaflander* and *O'Mara* make clear, we have not held that the failure to raise a claim, absent a rule requiring it to be raised or waived, constitutes a procedural default.

fails to state an offense' are jurisdictional claims not waived by the guilty plea." *United States v. Montilla,* 870 F.2d 549, 552 (9th Cir.1989) (quoting *United States v. Broncheau,* 597 F.2d 1260, 1262 n. 2 (9th Cir.), *cert. denied,* 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979)), *amended,* 907 F.2d 115 (9th Cir.1990).

■ Because Chambers asserts a jurisdictional claim, his failure to challenge the constitutionality of the statute in the district court prior to his plea or in this court on direct review does not bar him from raising the claim for the first time in a § 2255 proceeding. *See id.; see also United States v. Caperell,* 938 F.2d 975, 977 (9th Cir.1991). As we explained in *United States v. Mitchell,* 867 F.2d 1232 (9th Cir.1989):

> Mitchell's failure before trial and on direct appeal to challenge the indictment on the ground now asserted does not bar collateral attack. "If [Mitchell's] claim were correct, the indictment would fail to state an offense against the United States and the district court would be deprived of jurisdiction. Because the defect complained of is jurisdictional, [Mitchell's] claim is reviewable."

*Id.* at 1233 n. 1 (quoting *Broncheau,* 597 F.2d at 1262 n. 1) (alteration in *Mitchell* ).[12] It has traditionally been the role of collateral review to adjudicate just this kind of jurisdictional claim. *See Fay v. Noia,* 372 U.S. 391,

450–51, 83 S.Ct. 822, 854–55, 9 L.Ed.2d 837 (1963) (Harlan, J. dissenting); *Siebold,* 100 U.S. at 376–77. Indeed, even those commentators who have advocated imposing significant restrictions on collateral review have not challenged this traditional scope of habeas corpus. *See* Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U.Chi.L.Rev. 142, 151–52 (1970); Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,* 76 Harv.L.Rev. 441, 460–62 (1963). Even after *Frady,* § 2255 relief remains available for prisoners who assert jurisdictional claims, notwithstanding their failure to raise them at trial or on direct review. Thus, we conclude that Chambers has not waived his right to challenge his convictions in this proceeding.[13] Accordingly, the judgments of the district courts are reversed.

At this time, we remand the case to the district court for the limited purpose of setting appropriate conditions for Chambers' release,[14] pending issuance by this Court of the mandate in *X–Citement Video,* if that occurs. Further, we withhold the mandate in this consolidated appeal and retain jurisdiction herein pending further developments in *X–Citement Video.*

**12.** *See also Valencia v. United States,* 923 F.2d 917, 921 (1st Cir.1991) (§ 2255 case where no direct appeal was taken) ("A valid guilty plea does not waive jurisdictional defects, however."); *United States v. Harper,* 901 F.2d 471, 473–74 (5th Cir.1990) (§ 2255 case where no direct appeal was taken) ("Failure to charge an offense may be raised for the first time in a § 2255 petition because such an error divests the sentencing court of jurisdiction."); *United States v. Barboa,* 777 F.2d 1420, 1423 n. 3 (10th Cir.1985) (§ 2255 case where no direct appeal was taken) ("If Barboa pled guilty to something which was not a crime, he is not now precluded from raising this jurisdictional defect, which goes 'to the very power of the State to bring the defendant into court to answer the charge brought against him.' ") (quoting *Blackledge v. Perry,* 417 U.S. 21, 30, 94 S.Ct. 2098, 2104, 40 L.Ed.2d 628 (1974)).

**13.** If the government were correct that *X–Citement Video* announced a new rule, this would provide an additional ground for our conclusion that the cause and prejudice requirement does

not apply. We have consistently permitted defendants to challenge their convictions in § 2255 motions, where there has been an intervening change in the law after the time for direct appeal has run. *See, e.g., Sood,* 969 F.2d at 775 (defendants pled guilty and did not challenge their convictions until post-conviction collateral proceedings); *see also Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984) (holding that the novelty of a petitioner's claim can constitute cause for a procedural default).

**14.** The district court shall enter an order setting conditions for Chambers' release within twenty-eight days of the date of this opinion. Either party is given the right to challenge that Order in this Court, by filing a brief with the clerk of this court in this docket number within seven days of the entry of the district court's order. The other party may file a reply brief within seven days of the receipt of the opening brief. All briefs may be in the form of a letter to the clerk, and no brief shall exceed ten double-spaced pages in length.