Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.
The Ninth Circuit, in accord with another circuit's observation, has described § 1252(b)(9) as "breathtaking" because it "swallows up virtually all claims that tied to removal proceedings." J.E.F.M., 837 F.3d at 1031 (quoting Aguilar v. ICE, 510 F.3d 1, 9 (1st Cir. 2007) ). The provision is a "zipper clause" which consolidates all judicial review of immigration proceedings into one action in the court of appeals. Id. (citing St. Cyr, 533 U.S. at 313 & n.37, 121 S.Ct. 2271 ). Thus, "[t]aken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue - whether legal or factual - arising from any removal-related activity can be reviewed only through the PFR process."
*1047 Id. (emphasis in original). This channeling of claims to the appellate courts includes process and practices challenges which "arise from" removal proceedings. Id. at 1035.
C. J.E.F.M.
Against this statutory backdrop, the Ninth Circuit decided J.E.F.M. in 2016.[4]
There, immigrant minors placed in removal proceedings brought a class action complaint in district court asserting violations of their Fifth Amendment due process right to counsel and their statutory right to appointed counsel at government expense in immigration proceedings. The minors could not afford attorneys and had not obtained pro bono counsel for removal proceedings, yet were being compelled "to appear unrepresented in complex, adversarial court proceedings against trained [government] attorneys" for which they lacked the emotional and intellectual capacity to raise a right-to-counsel challenge. The minors alleged that if forced to wait and bring right-to-counsel claims through the PFR process, "they would be denied meaningful judicial review of their right-to-counsel claims if the district court lacked jurisdiction to hear the case." The district court granted in part and denied in part the Government's motion to dismiss the minors' complaint, holding it lacked jurisdiction over the statutory right-to-counsel claim but retained jurisdiction over the constitutional claim as a matter collateral to removal proceedings. The minors and the Government each filed interlocutory appeals, the former from the dismissal of the statutory claim and the latter from the denial of the motion to dismiss the constitutional claim.
The Ninth Circuit affirmed the dismissal of the statutory claim but reversed the denial of the motion to dismiss the constitutional claim, ultimately holding the district court had no jurisdiction over either claim. Id. at 1038-39. The court reasoned, after examining the history of the INA's jurisdictional sections and its 1996 and 2005 amendments, that the minors' right-to-counsel claims "must be raised through the PFR process because they 'arise from' removal proceedings." Id. at 1032-33. In addition, the court reasoned the minors' claims were neither ancillary to nor independent of the removal proceedings; "[r]ather, these claims are bound up in and an inextricable part of the administrative process. Id. at 1033.[5] More specifically, the court found "that Congress intended to channel all claims arising from removal proceedings, including right-to-counsel *1048 claims, to the federal courts of appeals and bypass the district courts." Id.
D. Application to the Instant Action
J.E.F.M. is indistinguishable from this case in the aspects critical to determining the court's jurisdiction. The J.E.F.M. court's interpretation of § 1252(a)(5) and § 1252(b)(9) therefore governs the outcome here.
Much like the minors did in J.E.F.M., Petitioners' frame their single claim as implicating their Fifth Amendment due process right to counsel.[6] Petitioners allege:
Petitioners' pro bono counsel cannot continue to represent their clients in jurisdictions beyond San Francisco. None of the Petitioners have financial means to retain private attorneys in Colorado or Washington. There are few, if any, meaningful opportunities to secure pro bono representation in Tacoma, Washington or Aurora, Colorado. Petitioners will be unrepresented if their proceedings are transferred outside San Francisco.
These transfers violate Petitioners' right to counsel by destroying their established relationship with their attorney, leaving them alone to navigate the byzantine immigration laws while detained....
Pet., Dkt. No. 1, at ¶¶ 4-5.
J.E.F.M. teaches, however, that Petitioners' challenge based on the potential loss of counsel "arises from" their removal proceedings and can only be raised through the PFR process, as required by § 1252(a)(5) and § 1252(b)(9). See J.E.F.M., 837 F.3d at 1032-33. This makes sense when examined along with Congress' intent in enacting the REAL ID Act; unlike issues truly collateral or ancillary to a removal proceeding, claims based on violations of the right to counsel during a removal proceeding are "zipped up" for review into one action by § 1252(b)(9) and eventually channeled to the court of appeals through the PFR process. Id. at 1031.
Distinctions between the minors' claims in J.E.F.M. and Petitioners' instant claims do not alter the jurisdictional analysis. That Petitioners raise disruption to an established representation relationship rather than a denial of representation, or believe their circumstances unprecedented, or classify their requested relief as less impactful when compared to J.E.F.M. are facts of no moment. There is no exception to § 1252(b)(9) for unprecedented, extraordinary, or less impactful circumstances, but instead one for "claims that are independent of or collateral to the removal process." Id. at 1032. But the nuances relied upon by Petitioners do not transform their claim into an ancillary or collateral issue, such that Petitioners' situation more closely resembles the unique facts addressed in Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006), or Singh v. Gonzales, supra, than it does the facts of J.E.F.M. [7] The right placed at issue by the *1049 Petition filed in this case still arises under the Fifth Amendment, as did the minors' right in J.E.F.M., and is unquestionably "bound up in and an inextricable part of the administrative process." Id. at 1033. The authorities cited by Petitioners which seemingly justify district court intervention to rectify interference with an immigrant's attorney-client relationship, such as Committee of Central American Refugees v. Immigration and Naturalization Service, 682 F.Supp. 1055 (N.D. Cal. 1988), were decided prior to the 1996 and 2005 amendments to the INA and are inapplicable for that reason.
Nor is the court persuaded that Jennings v. Rodriguez, --- U.S. ----, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018), confers it with jurisdiction over Plaintiffs' claims. In Jennings, the Supreme Court held § 1252(b)(9) did not foreclose its own jurisdiction to review a Ninth Circuit decision imposing a six-month implicit time limit on an immigrant's detention. 138 S.Ct. at 840. In reaching that conclusion, the Court counseled against an expansive reading § 1252(b)(9)'s "arising from" language so to avoid "staggering results." Id. The Court explained that though several types of injuries could be said to "arise from" actions to remove an immigrant - such as injuries that could support claims under Bivens,[8] or common law claims for assault or negligence - "cramming judicial review of those into the review of final removal orders would be absurd." Id. Furthermore, the Court noted that interpreting "arising from" in an extreme way would "make claims of prolonged detention," like the one before it in Jennings, "effectively unreviewable." Id.
Here, the court need not employ an expansive interpretation of § 1252(b)(9)'s "arising from" language to find that right-to-counsel claims, like those of Petitioners, fall squarely within the purview of the provision. See J.E.F.M., 837 F.3d at 1033. Moreover, "cramming" issues related to legal representation during removal proceedings into the PFR process neither creates an absurdity in the way contemplated by the Supreme Court in Jennings, nor places those decisions outside of meaningful judicial review.
Finally, the court observes that the procedural vehicle through which Petitioners' claim appears makes no difference to the analysis of jurisdiction. See Martinez v. Napolitano, 704 F.3d 620, 623 (9th Cir. 2012) ("When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)."). Whether the claim can present in a civil complaint, as in J.E.F.M., or through habeas, as here, § 1252(a)(5) and § 1252(b)(9) by their plain terms still channel an "arising from" claim through the PFR process to the courts of appeals, bypassing the district court. See Singh, 499 F.3d at 978 (holding that post-REAL ID Act cases considering the applicability of § 1252 in the habeas context "have [ ] distinguished between challenges to orders of removal and challenges that arise independently"); see also Nadarajah, 443 F.3d at 1076 (holding that a habeas petition did not invoke § 1252(b)(9)'s jurisdiction-stripping provision because it involved a detention challenge apart from removal proceedings). Indeed, § 1252(b)(9) specifically precludes any court from reviewing *1050 through habeas corpus any question of law or fact arising from removal proceedings, including right-to-counsel challenges. See J.E.F.M., 837 F.3d at 1033.
Based on the foregoing discussion, the court concludes that Petitioners' Fifth Amendment claims arise from their removal proceedings, and must be raised through the PFR process to the court of appeals. Because this court lacks jurisdiction to consider their claims, in habeas or otherwise, Petitioners' action must be dismissed.
E. Final Comments
The lack of jurisdiction over Petitioners' claims does not preclude the court from commenting on the incomplete and damaging process that ICE employed to transfer Petitioners. ICE's policy on detainee transfers requires it employ a "thorough and systematic review of the most current information available" when undertaking a transfer determination.[9] If this review reveals documentation to support the presence of immediate family in the area of responsibility; an attorney of record in the area of responsibility; pending or on-going removal proceedings, where notification has been given within the area of responsibility; or a granted bond or scheduled bond hearing, ICE "will not transfer a detainee. " Every Petitioner in this case was represented by an attorney within the San Francisco area of responsibility, but every Petitioner was inexplicably transferred out of state, contrary to the policy. Thus, though ICE's policy may have admirable goals as written, it has no purpose if it is so easily disregarded. ICE offered no response in this action to its flagrant failure to comply with its own directives other than to say it conducted a review of other issues, and its silence is deafening.
To make matters worse, it was revealed at the hearing that some of Petitioners' cases were already transferred to immigration courts in other states. The speed at which this occurred - again without regard for the presence of counsel in San Francisco - is troubling. As a matter of optics, a policy which condones the movement of detained, represented immigrants without notice to their counsel, and leads to the immediate transfers their cases out of the area, does little to inspire public confidence in the executive's ability to fairly and responsibly adjudicate immigration cases.
As the court understands the circumstances, there was still approximately two months remaining before ICE's contract with Contra Costa County finally terminated. Yet, represented immigrants like Petitioners with hearings scheduled for the same week, and indeed same day, as the TRO hearing were transferred to Washington and Colorado. Other than a lack of "bed space," which quantum is apparently constantly in flux, no justification was given for the timing of Petitioners' transfers. And it is similarly unclear why Petitioners could not have remained at the West County Detention Facility, or another local facility with which the government contracts, until their hearings were completed. While the court understands it was not ICE's decision to terminate its contract, it seems no creative solution outside of an out-of-state transfer was seriously contemplated. But sometimes the easiest solution is not the best one.
In sum, this order should not interpreted as a judicial approval of ICE's decision to transfer Petitioners. While the court's application of the law compels it to dismiss *1051 this case, the law does not compel it to countenance an agency's action that is contrary to the norms of this country's justice system.
III. ORDER
This action is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction. All other matters are TERMINATED, and the Clerk shall close this file.
IT IS SO ORDERED.

At the hearing, counsel for Petitioners suggested the panel opinion in J.E.F.M. was subject to en banc consideration. The Ninth Circuit's docket, however, reveals only a pending motion for panel rehearing and rehearing en banc, filed on December 5, 2016. Under these circumstances, J.E.F.M. remains as law of the circuit which this court is bound to follow. See Chambers v. United States, 22 F.3d 939, 942 n.3 (9th Cir. 1994), vacated on other grounds, 47 F.3d 1015 (9th Cir. 1995) (holding that in the Ninth Circuit, "once a published opinion is filed, it becomes the law of the circuit until withdrawn or reversed by the Supreme Court or an en banc court."); see also In re Zermeno-Gomez, 868 F.3d 1048, 1052 (9th Cir. 2017) (holding under the "law of the case" doctrine, "a published decision of [the Ninth Circuit] constitutes binding authority 'which 'must be followed unless and until overruled by a body competent to do so.' ").

The Ninth Circuit agreed with the First Circuit's analysis of a similar issue: "[b]y any realistic measure, the alien's right to counsel is part and parcel of the removal proceeding itself.... [A]n alien's right to counsel possess a direct link to, and is inextricably intertwined with, the administrative process that Congress so painstakingly fashioned." J.E.F.M., 837 F.3d at 1033 (quoting Aguilar, 510 F.3d at 13 ).

Though counsel's argument was not entirely clear on this point, Petitioners indicate in their papers they do not directly challenge the Attorney General's ability to transfer them from one facility to another as a general matter, and concede the Attorney General may determine where non-citizens should be detained during removal proceedings. Mot., Dkt. No. 3, at 6:21-7:6.

Because they also addressed issues ancillary or collateral to removal proceedings, the other cases cited by Petitioners at the hearing - Medina v. U.S. Dep't of Homeland Sec., No. C17-218-RSM- JPD, 2017 WL 2954719 (W.D. Wash. Mar. 14, 2017) ; Lai v. United States, No. C17-1704-JCC, 2018 WL 1610189 (W.D. Wash. Apr. 3, 2018) ; Innovation Law Lab v. Nielsen, 310 F.Supp.3d 1150 (D. Or. 2018) ; and Sied v. Nielsen, No. 17-cv-06785-LB, 2018 WL 1876907 (N.D. Cal. Apr. 19, 2018) - do not assist them in demonstrating district court jurisdiction.

This shorthand term references another Supreme Court case, Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

ICE Transfers Policy No. 11022.1 (Jan. 4, 2012), https://www.ice.gov/doclib/detentionreform/pdf/hd-detainee-transfers.pdf.